CASE 89—ACTION BY KENTUCKY CHAUTAUQUA ASSEMBLY AGAINST CITY OF LEXINGTON, ETC., TO ENFORCE CONTRACT WITH THE CITY FOR THE SALE OF WOODLAND PARK.—FEB. 10.

# City of Lexington v. Kentucky Chautauqua Assembly.

APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENT OVERRULING GENERAL DEMURRER TO PLAINTIFF'S PETITION AND DEFENDANTS APPEAL. AFFIRMED.

MUNICIPAL CORPORATIONS—POWER TO ACQUIRE PARK FOR CITY PURPOSE.

Held:   1. Kentucky Statutes, section 3038, gives cities of the second class power to acquire property for municipal purposes, and section 3058, subsection 16, confers power to purchase or lease any real or personal property for the use of the city. HELD, that the acquisition of land for a public park was for a municipal purpose, and authorized.

W. S. BRONSTON, FOR APPELLANTS.

MORTON, DARNELL & WILSON AND J. H. BEAUCHAMP, FOR APPELLEE.

This is a friendly suit to test the validity of an ordinance of the city of Lexington authorizing the submission to a popular vote the proposition to purchase the grounds of the Kentucky Chautauqua Assembly lying partly within and partly

without the city, consisting of about twenty acres, to be used by the city for a public park. The vote having carried, the mayor was called on to issue the bonds of the city for the agreed price, $38,000, and to accept the deed tendered by the plaintiff, and having some doubts as to the validity of the purchase, he declined to issue said bonds or to accept the deed, hence this suit to enforce the contract.

A petition was filed by the Kentucky Chautauqua Assembly setting out the facts above recited to which the city and mayor filed a general demurrer, which, being overruled by the court, the city declined to plead further and from the judgment entered enforcing said contract the city appeals to test the validity of said purchase.

We submit:

1. That the city has the power to contract for and purchase the property in question for a public park and pleasure grounds for the city.

2. That the power in this case has been lawfully exercised.

### AUTHORITIES CITED.

Holder v. City of Yonkers, 56 N. Y. S., 912 (S. C., 39, App. Dev., 1); Richmond, &c. v. Town of West Point, 94 Va., 668 (S. C., 27, S. E., 460); Modern Law Mun. Corp., sec. 623; A. & E., vol. 20, p. 1184, Kentucky Statutes, secs. 2840, 2859, 3070, 3073, 3190, 3195, 3637, subsec. 1; Louisville v. Dupont, &c., 23 R., 106; In re Mayor, 99 N. Y., 569 (S. C., 2 N. E. Rep., 642); St. Louis v. Griswold, &c., 58 Mo., 175, 15 Wend., N. Y., 374; Belknap v. City Louisville, &c., 99 Ky., 474; Montgomery Fiscal Court v. Trimble, 20 Rep., 827.

OPINION OF THE COURT BY JUDGE BURNAM—AFFIRMING.

The appellant, the city of Lexington, has appealed in this case from a judgment of the Fayette circuit court overruling a general demurrer to the petition of appellee in a suit brought to require the defendant H. T. Duncan, as mayor, to carry out a contract made with the city council of Lexington for the purchase of Woodland Park. The facts alleged in the petition and conceded by the demurrer to be true are that the Kentucky Chautauqua Assembly, a corporation, through its president, proposed in writing to H. T. Duncan, mayor of the city, on the —— day of September,

1902, to sell to the city the grounds of the company known as "Woodland Park," for the purpose of a public park, for the sum of $38,000, which was to be paid within a reasonable time after the city of Lexington should be authorized to make the purchase under the provisions of the charter of the city, but not later than February 1, 1903; that this proposition was duly submitted by the mayor to the council of the city, who, on the 11th of September, by an ordinance, authorized the mayor to submit to the voters of the city of Lexington, at an election to be held for that purpose, the question of accepting the proposition. and issuing bonds sufficient to pay therefor the sum of $38,000; that pursuant to the ordinance an election was duly held, after giving the notice required by the statute, on the 4th of November, 1902, the same being the day on which the regular annual election was held; and that at this election 1,601 voters voted in favor of the purchase and 638 against it.   More than two-thirds of the entire number of votes so cast were in favor of the proposition, which vote was duly ascertained by the board of election commissioners of Fayette county on or about the 10th day of November, 1902, and so certified to the general council of the city of Lexington, and to H. T. Duncan, mayor of the city; that the general council thereupon authorized the city solicitor of the city to institute legal proceedings to test the validity of the bonds authorized by the vote before placing them upon the market; and plaintiff, in conformity with their proposition to sell, executed and tendered to the city, through its mayor, a sufficient deed to the land, and demanded the payment of the contract price.   It is further alleged that the assessed value of the taxable property of the city, previous to incurring the indebtedness, was $17,-635,916.32; that the rate of taxation fixed by the city for

the fiscal year in which the indebtedness was incurred was $1.16 2-3 per hundred. All steps looking to the consummation of the agreement by the city to purchase the property seem to be in strict conformity with the constitutional and statutory provisions applying thereto. The whole question, at last, is one of power in the council to make the purchase; for, if they had the power, it will not be contended that their discretion, judgment, or prudence in making it, if honestly exercised, can be controlled or revised by the courts.

Section 3038 of the Kentucky Statutes reads as follows: "The cities of Covington, Newport and Lexington are hereby declared to be cities of the second class, and the inhabitants thereof, and such other cities as may hereafter be declared cities of the second class, respectively, are created and continued bodies corporate and politic, within their respective limits, with perpetual power to govern themselves in all fiscal, prudential and municipal concerns, by such ordinances and resolutions as they may deem proper, not in conflict with this act or the Constitution of the State of Kentucky, or the Constitution of the United Sates; to acquire property for municipal purposes, by purchase or otherwise, within their corporate limits or elsewhere; to hold the same and all property and effects now belonging to said cities, held either in their own name or in the name of other, for the use of each of said cities, for the purpose and interest for which the same were granted or dedicated; to use, manage, improve, sell, convey, rent or lease the same; and to have like power over property hereafter acquired, and as such, by their respective names, shall be capable in law of contracting and being contracted with, of suing and being sued, of pleading and being pleaded, answering and being answered, in all courts and places,

and in all matters whatsoever; and shall have and use, respectively, a corporate seal, and make, change, alter and renew the same at pleasure." And by subsection 16 of section 3058 they are given power "to purchase or lease within the limits of the city, or elsewhere, any real or personal property for the use of the city, to control, manage, improve, sell or lease, or otherwise dispose of the same for such purpose and consideration as it may deem proper for the public welfare." So far as we are able to find in the charter, this authority to purchase land for the public welfare is subject to no restriction or limitation, except that a limitation is placed upon the amount of indebtedness which the city may incur, and the amount which shall burden the city in any one year. These limitations in no wise affect any question involved in this appeal. The authority to buy is granted in express terms, the obligation incurred is within the limitation, and the only question which remains is, was the authority exercised for a city purpose? It seems to us that there can be no doubt that the acquirement of lands for the purpose of a public park is a city purpose. The health and comfort of the inhabitants of a city is necessarily one of the chief concerns of municipal government. No one at this late date would for a moment question the power of a city to furnish pure water, light, clean streets, and proper sewerage. And the obligation to furnish pure air and a place for healthful exercise and recreation stands upon the same footing, and is a city purpose. In re Mayor, etc., to Acquire Parks, 99 N. Y., 569, 2 N. E., 642, the words "city purpose" are defined, and held to include the purchase of lands adjoining a city, but beyond its boundaries for a park. The court said: "It is impossible to formulate a proper definition of

what is meant by a 'city purpose.' Yet two characteristics
it must have. The purpose must be primarily the benefit,
use and convenience of the city, as distinguished from that
of the public outside of it, although they may be incident-
ally benefited; and the work be of such a character as to
show plainly the predominance of that purpose. And then
the thing to be done must be within the original range of
municipal action. Acquiring and maintaining parks is
within that range." In People v. Kelly, 76 N. Y., 487,
the court says: "The acquirement of land for purposes
of a city park is a city purpose." An analogous ques-
tion was before the court in the City of Owensboro v. The
Commonwealth, 105 Ky., 344 (20 R., 1281) (49 S. W., 320,
44 L. R. A., 202). The question in that case was as to the
power of the Commonwealth to compel the city to pay
taxes on a public park belonging to the city. It was held
exempt from taxation as public property used for public
purposes. The court said: "The municipal authorities are
charged with the duty to maintain the public health, and
in the judgment of scientific men it is essential to the
public health that cities have and maintain parks where
the people can have pure, wholesome air. They are just
as much public property, used for public purposes, as are
the streets and trees planted therein, and it would be just
as proper and reasonable to tax the one as the other. In
our opinion, the public park is public property used for a
public purpose, and necessary to the proper government of
a city." Dense populations require these breathing places.
We are, therefore, of the opinion that the acquirement
of Woodland Park by the city authorities of Lexington is
a city purpose, and within the provisions of the charter.
It therefore follows that the demurrer was properly over-
ruled, and the Defendant Duncan, as mayor of the city,

required to carry out the provisions of the ordinance, and sell in pursuance thereof the bonds provided for, and out of the proceeds of such sale to pay to the appellee, the Kentucky Chautauqua Assembly, the sum of $38,000, as agreed to be paid for the park property.

Judgment affirmed.