Case 35.—ACTION BY SUE BROWNE ELLIOTT AGAINST THE
CITY OF LOUISVILLE AND OTHERS TO RECOVER CER-
TAIN PROPERTY KNOWN AS "ELLIOTT PARK."—June 13.

## Elliott v. City of Louisville, &c.

Appeal from Jefferson Circuit Court, (Chancery
Branch, 1st Division.)

SHACKELFORD MILLER, Judge.

Judgment for Defendants. Plaintiff appeals. Af-
firmed.

1. Trusts—Conveyance of Land—Parks—Where an owner of cer-
   tain outlying property adjacent to a city platted the same, and
   in a deed to a large amount of surrounding property cove-
   nanted to hold a certain block for a public square or park until
   it should be included in the city limits, and on the happening
   of such event that he would convey the block to the city for a
   public square, if the city would accept it as such, such cove-
   nant constituted a valid trust of such block for the city's bene-
   fit, notwithstanding the grantor was the trustee.

2. Dedication—Parks—Where an owner of certain outlying prop-
   erty adjacent to a city platted the same, and caused a map
   thereof to be recorded in the county clerk's office on which one
   square, situated near the center of the plat, was given a
   number and designated "Elliott Park," such acts constituted
   a valid dedication of the park to the city, which it was entitled
   to accept in the future.

3. Same—Delay—Where an owner of outlying property platted the
   same in 1868, the plat showing a square dedicated for a public
   park, which the owner covenanted to hold for the city's benefit
   in a conveyance of other property subsequently made, based
   on a valid consideration, the city's delay until 1895 in extend-
   ing the limits of the city to include the property in question and
   in passing an ordinance accepting the park was not such as
   to deprive it from the right of acceptance.

4. Adverse Possession—Trustees—Where an owner of certain
   property dedicated to a city for park purposes created a trust
   thereof for the city's benefit, his possession as trustee prior to
   the acceptance of the property by the city was not adverse
   either to the city or to grantees of other lands on the faith of
   such trust.

5. Taxation—Trust Property—Assessment to Trustee—Where an owner of certain land held the same in trust for a city for park purposes, and prior to the acceptance and improvement thereof received the rents and profits arising from its use as a ball ground, he was properly charged with State and county taxes thereon.

6. Trust—Revocation—Where a trust of certain property for park purposes was based on a grant for a valuable consideration, which passed at the time the contract was made, it was not subject to revocation by the grantor's successors in interest prior to its acceptance by the city, for whose benefit it was made, but was enforceable both by the city and by other parties to the grant, who purchased other property on the faith thereof.

McDERMOTT & RAY for appellant.

### POINTS AND AUTHORITIES.

1. The appellees have no equity.

2. The map did not dedicate park (Rowan v. Portland, 8 B. Mon, 236.)

3. Not a lot sold prior to contract of Oct. 1, 1868.

4. Analysis of contract. Elliott held the legal title but had **not** the right to possession.

5. Main consideration to him lost because city did not act **in a** reasonable time.

6. Inaction of Legislature nullified contract. (Cyc. Law, 631.)

7. Schwartz & Co. did not carry out contract.

8. Park allowed to go to ruin almost immediately.

9. Taxes necessarily assessed. Paid by Elliott.

10. Elliott justly resumed possession in 1872 or 1873.

11. Admission fees charged everybody.

12. Under contract Elliott's possession hostile. (21 Am. & Eng. Ency. of Law, 1072.)

13. City's claim without action futile. (Sec. 2509 Ky. Stat.; Abner v. Creech, 79 S. W. 248.)

14. This a preposterous park. Useless and expensive.

15. City could accept only in a reasonable time. (Chitty on contracts, 11 Am. Ed. Vol. 2, p. 1062; 23 Am. & Eng. Ency. Law (2d ed.), p. 971, note; Cassity v. Robinson, 8 B. Mon, 281; Hicks v. Shouse, 17 B. Mon, 483.)

16. City and Legislature refused conditions and rejected offer in Charter of March 3rd, 1870, and act of February 28th, 1871, and act of March 21st, 1871.

17. No offer to accept for 32 years. Gross Laches.

18. Statute of Limitations not suspended by contract.

19. Laches of city justified Elliott's revocation. (13 Cyc. Law & Proc., 461; Washburn on Eas., sec. 20, p. 195; People v. Reed, 81 Cal., 77; Howard v. Mauser, 70 Cal., 476; Vermont v. Miller, 161 Ills., 210; Schmitz v. Ger., 31 Ills., a. p. 284; Dillon on Munic., cor. sec. 538; Town v. Cook, 97 Ia., 599; Village v. Jensen, 84 Mich., 54; Field v. M., 32 Mich., 279; People v. Kellog, 67 Hun. (N. Y.), 547; Forsyth v. D., 94 Cal., 438; St. Louis v. St. L., 88 Mo., 115; Trustee of LaGrange v. Bain, 4 Ky. L. R., 256.)

20. Statute of Limitations complete bar here.

21. Elliott had legal title but not "right to possession" after contract. (21 Am. & Eng. Ency. Law, 1067; 4 Kent. Com. P. 374; 2 Black, Com. 191; 28 Am. & Eng. Ency. Law, 233; Washburn Real Prop., Bk. 3, Chp. 1, Vol. 2, p. 400; Fitzhugh v. Croghan, 2 J. Mar., 429.)

22. If Elliott trustee, he could and did repudiate trust. (28 Am. & Eng. Ency. Law, 1133; 2 Perry on Trusts, sec. 864; Rowan v. Portland, 8 B. Mon., 232; 1 Cyc. Law & Proc., 1064.)

23. Cause of action in Schwartz & Co. Statute started against all. (Baptist Ch. v. Pres. Ch., 18 B. Mon., 641; Rowan v. Portland, 8 B. Mon., 259.)

24. Thirty years' possession bar to all. (Sec. 2508 Ky. St.; Rose v. Ware, 25 Ky. L. R., 947; Wise v. Wolfe, 85 S. W., 1193; Addison v. Southworth, 25 Ky. L. R., 776.)

25. Any private use of public square hostile and actionable. (21 Am. & Eng. En. Law, 1066 and 1072; 2 Dillon Mu. Corp. (4 Ed.), 766; Rowan v. Portland, 8 B. Mon., 259.)

26. Elliott's use of "public square" for base ball park hostile. (Owsley v. Owsley, 25 Ky. L. R., 1186.)

27. Animus furandi not essential. (1 Am. & Eng. Ency. L., 790, 791 (note), 798, 818, 828; Hall v. Ditto, 11 Ky. L. Rep., 669.)

28. Enforced payment of taxes gives an equity; evidence of hostile claim. (1 Am. & Eng. Ency. L., 831; Walling v. Eggars, 25 Ky. L. Rep., 1563.)

29. Vacancy of lot after fire unimportant. (1 Am. & Eng. Ency. Law, 841, 879, 882; 1 Cyc. Law & Proc., 1064.)

30. Not a continuing and subsisting trust under sec. 2543, Ky. St. (Stubbins v. Briggs, 24 Ky. L. R., 230; Smith's Guardian v. Holtheide, 25 Ky. L. R., 125.)

31. Written notice to city of adverse holding not necessary. Sec. 2546 Ky. Stat. inapplicable; Elliott's rights prior thereto.

32. Square not "in" city till 1895. (Sec. 4, Art. 1, P. 158, Gen. St. Act of Apr. 22, 1873; Cornwall v. L. & N. R. R., 87 Ky., 72; Johnson v. Owensboro, 18 Ky. L. R., 276.)

33. City expressly denied power to accept or establish a park since Charter March 3rd, 1870.

34. That power only in Board Park Commissioners since April 30th, 1890.

35. Elliott's title then perfect by limitations.

36. Performance being impossible, contract not binding. (9 Cyc. Law & P. 627, 629, 630, 631.)

37. Contemplated action of Legislature failing, contract unenforceable.

38. Board Park Commissioners cannot be substituted. (9 Cyc. L. & P., 255, 256, 460; Boston 1, Co. v. Potter, 123 Mass., 28; 13 Cyc. L. & P., 459; 9 Am. & Eng. En. Law, 51.)

39. Park Commissioners not agent or arm of city. (Pol. Com. v. City of L., Bush, 597; City of Louisville v. Com., 1 Duv., 297; 21 Am. & Eng., En. Law, 1070, 1071.)

40. Board of Park Commissioners agent or arm of State.

41. Former's jurisdiction extends also to county. (S. 2840, 1, 4, 5, 6, 8, 9 Ky. Statutes; B. Park Commissioners v. Dupont, 110 Ky., 743.)

42. Board's power is exclusive. (21 Am. & Eng. Ency. Law, 1068, 1070, 1071; Com. v. Davis, 168 Mass., 510; Lincoln v. City, 148 Mass., 578; West Chicago Park v. City, 152 Ills., 392, 399, 400; West Chicago Park v. Mullen, 134 Ill., 17.)

45. To take this land now would be an inexcusable private wrong for a doubtful public gain—an act of needless spoliation and oppression to establish a preposterous park.

A. E. RICHARDS for City of Louisville; KOHN, BAIRD & SPINDLE for Park Com'rs; ALBERT S. BRANDEIS for purchasers.

## POINTS AND AUTHORITIES.

1. Appellant took title in trust for the public use. (Rowan v Portland, 8 B. Monroe, 238.)

2. Appellees have never been in default in performance under the deed of 1868, and if they have, the remedy is not forfeiture. (Carroll County Academy v. Gallatin Academy, 104 Ky. 621.)

3. Performance by the public under the grant of 1868 has never been impossible.

4. The grant to the public has never been abandoned. Non-user is not an abandonment. (L. & N. v. Quinn, 94 Ky., 310; Curran v. Louisville, 83 Ky. 632-34; McAlpin v. Railway Company, 64 L. R. A., 85.)

5. Payment of taxes on public property works neither an estoppel nor abandonment. (City of Uniontown v. Berry, 24 Rep.

1696; Busse v. Covington, 19 Rep. 157; Mobile Transp. Co. v. Mobile, 64 L. R. A. 334.)

6. Adverse possesion. Not applicable to a continuing express trust. (Robinson v. Elam, 90 Ky. 304; McRoberts v. Corneal (Ky.), 44 S. W. 442.)

7. Mere possession by a trustee can not be adverse to the cestui que trust, because the trustee is entitled to possession. (Ogden v. Walker, 6 Dana, 423-4; Bosworth v. Mt. Sterling, 12 Rep. 157.)

8. Dedication to future use needs no present acceptance. (Rowan v. Portland, 8 B. Monroe, 250.)

9. There can be no adverse holding against the public without written notice, and this applies without reference to whether the adverse holding began prior to the statute. (Ky. Stat., sec. 2546; Cornwall v. Railroad, 87 Ky., 72; Bosworth v. Mt. Sterling, 12 Rep., 157; James v. Louisville, 19 Rep., 447; City of Cadiz v. Hillman, 20 Rep., 1776; Davis v. City of Clinton, 25 Rep., 2021.)

10. Rights of purchaser. (Rowan v. Portland, 8 B. Monroe, 232; Riverside v. Maclean, 66 L. R. A., 288.)

11. The dedication could not be revoked by appellant alone. (Rowan v. Portland, 8 B. Monroe, 247.)

OPINION BY JUDGE SETTLE.—Affirming.

In June, 1868, T. D. Elliott owned a tract of land west of and just beyond the then corporate limits of the city of Louisville. Having in view its sale, he laid it off into squares, lots, and streets and made a map thereof, which he caused to be recorded in the Jefferson county clerk's office, thereby dedicating the streets to public use and indicating the squares and lots for sale; each square being numbered. Upon this map one square, situated near the center of the tract, was given the number 8 and designated "Eliott Park." Soon after the recording of the map a number of citizens of Louisville, through the firm of John Schmidt, Schwartz & Co., purchased of Elliott at the price of $39,662 all the lands east of Twenty-Ninth street, as shown on the map, except square 8, known as "Elliott Park." The lots thus sold surrounded square 8 on all sides, save on the west. Elliott did not convey the lands sold by a joint deed to the purchasers, for they, as among themselves, made a divis-

ion of the land; each paying for what he got his proportion of the gross consideration, and each receiving of Elliott and wife a deed of conveyance to his part of the land acquired in the division. All these deeds bear date October 1, 1868, and were put to record immediately thereafter. At the time the deeds referred to were executed the following written contract was entered into by Elliott and wife and the several purchasers mentioned: "This agreement, made the 1st day of October, A. D. 1868, by and between Theodore D. Elliott and his wife, Susan, of the first part, and Samuel Brandeis, Theodore Schwartz and his wife, Anna A. Schwartz, Columbus Brookenbrough, Charles L. Francke, Ernest C. Bohne, Gustavus T. Bergman, Julius Winter, William G. Meier, Ferdinand J. Pfingst, Lewis Heimke, Frederick Johnson, and George Zoeller, of the second part, witnesseth: That the said parties for valuable considerations, hereby admitted, agree, first, that the lands this day conveyed by the parties of the first part to the parties of the second part in severalty, except the said T. Schwartz, are conveyed subject to a lease made by said T. D. Elliott, and which is to expire on the 5th day of March, 1869; second, that the square 8 in said Elliott West End addition to Louisville shall be held by the said T. D. Elliott for a public square, and that the parties of the second part will inclose it and plant it with trees for that purpose, and that when the said square shall be included within the city limits the said T. D. Elliott will convey the same to the city of Louisville for a public square, if the said city will agree to accept and maintain it as such. In testimony whereof the said parties hereto set their hands. The said Susan joins herein in order to relinquish her contingent right of dower." The foregoing writing was signed and acknowledged by all the parties named therein and duly recorded.

T. D. Elliott died in 1877, testate, leaving a large

estate, of which his wife became the owner as sole devisee under his will. T. D. Elliott before his death and his widow after his death made several sales of lots from ''Elliott's West End Addition,'' in the deeds to which they were described as parcels of certain blocks in such addition, by reference to the map of record in the clerk's office. The city of Louisville took no steps to extend its boundary, so as to include square 8, until 1895. At that time the extension of boundary was made and Elliott Park, together with other contiguous territory, was taken within the corporate limits of the city. After the extension of the territorial boundary of the city, so as to include Elliott Park, its common council, by ordinance approved August 2, 1900, accepted it as a public park in accordance with the grant of 1868 from Elliott and wife. The ordinance in question is as follows: ''Be it ordained that square 8 (describing it) be and the same is hereby accepted as a public square or park of the city of Louisville, to be known and called 'Elliott Park,' and the city of Louisville hereby agrees to maintain said square of ground as a public square or park in accordance with the terms and conditions contained in the said written agreement between said Theodòre D. Elliott and wife, of the first part, and Samuel Brandeis and others, of the other part, dated October 1, 1868.''

This action was instituted by appellant, the widow of T. D. Elliott, against the city of Louisville, its park commissioners, and the parties to the contract of October 1, 1868, for the purpose of having the court declare void that contract and quiet appellant's title to Elliott Park, upon the grounds that the parties thereto, other than appellant, had failed to comply with their part of the contract, and that the appellee city of Louisville had failed to extend its boundary so as to include Elliott Park within a proper or reasonable time. By an amended petition filed Jan-

uary 16, 1904, Jacob Seibert and Ernest C. Bohne, both owners of real estate adjacent to Elliott Park, and the latter a party to the contract of 1868, were made parties defendant to the action and asked to be required to defend for all persons who might have an interest in the property and matters in litigation. By other amendments from time to time additional property holders in the neighborhood of the park, who had received deeds from appellant or her husband, were also made defendants and called upon to answer. The answers of appellees, by appropriate denial and averment, resisted the right of appellant to the relief sought; alleged the extension of the boundary of the city of Louisville so as to include Elliott Square, and its acceptance as a park by the city, set forth the performance of the contract of 1868 by the grantees therein and insisted that appellant be required to convey by proper deed to the city of Louisville and her park commissioners Elliott Square as and for a public park, as provided by the written contract of October 1, 1868. After the taking of much proof by the parties the case was submitted, and the learned chancellor having it in hand, being of opinion that appellant was not entitled to the relief demanded, rendered judgment dismissing the action and decreeing a conveyance of Elliott Park to appellees city of Louisville and its board of park commissioners, and the reversal of that judgment is sought on this appeal.

It is contended for appellant that the contract of October, 1868, was violated by the parties with whom it was made; that the laches of the parties intended to be benefited and of the city of Louisville constituted an abandonment of the contract, which authorized its repudiation by appellant; that she did repudiate it, and by her resulting adverse possession of Elliott Park acquire a perfect title thereto; and that the alleged trust created by the contract in question is not enforceable because barred by limitation.

We think the writing of October 1, 1868, was a declaration of trust executed by T. D. Elliott and wife for a valuable consideration, and the trust is not affected by the fact that Elliott was himself made the trustee.   In Perry on Trust, § 95, it is said: "Where an agreement is entered into for a valuable consideration, and a trust is intended, the mere form of the instrument is not material; for, if the trust is not perfectly created or executed by the instrument, a court of equity can enforce it as a contract.  *  *  * The authorities establish the proposition that, where there is a valuable consideration, the court will enforce the trust, though it is not perfectly created, and though the instruments do not pass the title to the property, if from the documents the court can clearly perceive the terms and conditions of the trust and the parties to be benefited.   In such a case effect is given to the consideration to carry out the intention of the parties, though informally expressed." In Adams v. Adams, 21 Wall, 192, 22 L. Ed. 504, the Supreme Court approved the following statement on this subject contained in Lewin on Trusts, p. 55: "If the settler propose to convert himself into a trustee, then the trust is perfectly created, and it will be enforced as soon as the settler has executed an express declaration of trust intended to be final and binding upon him, and in this case it is immaterial whether the nature of the property be legal or equitable."

The trust created by the writing of October 1, 1868, had for its primary object the pecuniary advantage of the grantor, viz., the increase that would be given the vendible value of his surrounding lands from the maintenance by the city of the park, and, secondly, the enhancement of the value of the lots that had already been sold by the grantor to the other parties named in the writing, and by making the public (i. e., the city of Louisville) a cestui que trust the parties to the writing expected to insure the maintenance of the

park without expense to themselves. A further consideration, and one that was certainly valuable, for the creation of the trust, were the considerable, not to say extraordinarily large sums of purchase money received by the grantor from the other parties to the writing, to whom he sold and conveyed lots surrounding Elliott Park, upon the assurance that it would be preserved and maintained as a park. The writing in question contains the provision that T. D. Elliott, the then owner of square No. 8, known as "Elliott Park," would hold it—both the title and possession—for a public square or park until it should be included in the city limits, upon the happening of which event he would "convey the same to the city of Louisville for a public square, if the said city will accept and agree to maintain it as such." It will be observed that no time was fixed by the writing within which the city of Louisville was to extend its boundary so as to include Elliott Square or to accept it as a park. This omission was obviously intentional, and it shows that the parties understood that the extension of the city's boundaries and its acceptance of the park would necessarily be remote, for which reason it was deemed advisable to retain the legal title to the park in Elliott, and its possession as well, until the city should take action as contemplated. Indeed, this was necessary; otherwise, the fencing around it and the trees on it would have been removed or destroyed, and the land itself left to the use of trespassers. Independently of the writing of October 1, 1868, the acknowledgment and recording of the map showed an intention on the part of Elliott to dedicate square 8, as well as the streets thereon indicated, to public use, and also showed, as does the language of the writing of October 1, 1868, that an immediate acceptance of the park was not contemplated by the parties. Indeed, an immediate acceptance of the grant was not necessary to its validity. Rowan's Ex'rs v. Portland, 8 B. Mon. 238.

We do not think the delay upon the part of the city of Louisville in accepting Elliott Square for park purposes ought to defeat its acceptance thereof as finally made. Its acceptance necessitated, first, an extension of the city limits so as to include it. Such extensions are not always advantageous, and are not advisable unless demanded by the public good. Obviously, the common council of the city of Louisville were of opinion that no necessity existed for embracing Elliott Square within the city limits until 1895, or for accepting it as a public park until the enactment for that purpose of the ordinance of August 2, 1900, and that the expense attending such extension and acceptance would have been unwarranted at an earlier date. If so, it was the part of wisdom to postpone these matters, as was done, and it does not lie in the mouth of appellant to complain of the delay, in view of the fact that there was nothing in the writing of October, 1868, that compelled earlier action on the part of the city authorities. The extension of a municipal boundary rests purely in legislative discretion, and it is well settled that the mere nonuser of public property—that is, property taken or dedicated to public use—is not an abandonment, no matter how long the nonuser may exist. L. & N. R. R. Co. v. Quinn, 94 Ky. 310, 15 Ky. L. R. 83, 22 S. W. 221; Curran v. City of Louisville, 83 Ky. 632, 7 Ky. L. R. 734; McAlphin v. Railway Co. (Kan.) 75 Pac. 73, 64 L. R. A. 85.

The claim of appellant that the contract between Elliott and his grantees was violated by the latter in failing to fence Elliott Park and plant it in trees does not seem to be sustained by the evidence. Our reading of the record inclines us to agree with the conclusion expressed by the chancellor on this point as follows: "The proof clearly shows that Elliott's grantees fully complied with the contract of October, 1868, by inclosing square 8 (Elliott Park) with a substantial

fence and planting trees, certainly prior to June 25,·
1869. There can be no doubt of that fact, in view of
the explicit testimony of such intelligent and careful
men as Messrs. Bohne and Schwartz. The paper of
October, 1868, required them to do no more.'' There
was nothing, therefore, in the conduct of Elliott's
grantees that justified his or his widow's attempted
repudiation of the trust.

We do not think appellant's plea of the statute of
limitation available.  The possession of herself and
husband was not adverse to their grantees or the city
of Louisville, because not inconsistent with the rights
of the latter or their own relation to the trust created
by the writing of October 1, 1868. As well said by the
chancellor in his conclusion No. 2: ''He (T. D.
Elliott), not they, was the one who held square 8 for
ε. public square   *   *   *   until it should be included
in the city limits, at which time he was to give up his
holding and carry out the agreement by conveying
it to the city.  Elliott and his devisee had the right
to hold it until that time arrived, and, if they
used it for their own advantage or gain, that fact
cannot be used by them and to their profit in this
contest.''

The only evidence as to expenditures made by
Elliott upon the park was that he paid the State taxes
on it. But he made more on it than he expended, for
in 1872 or 1873 he leased it for baseball purposes at a
profitable rental, and allowed it to be inclosed with a
high fence and seats to be erected upon it, and it was
used as a baseball ground for several years. We think
he had the right, under the writing of October 1, 1868,
to put the park to such use during his holding of it,
and to make thereby what money he could. Certainly
such user was as nearly akin to the ultimate use to
which it will be put by the city of Louisville as could
have been contemplated by the parties to the writing
in question, for by it the square was preserved intact

and made a public resort. Manifestly, such use of the park by the Elliotts contained no element of hostility. Indeed, there is no proof in the case that will fairly justify the application of the claim of adverse possession in law or in fact.

Much stress is placed by counsel upon the payment by appellant and her late husband of taxes on the property in controversy. No city taxes were ever paid on it, and, as the Elliotts had the use of the income from it before its acceptance by the city, it was not a hardship to them to have to pay the State and county taxes. Besides, in the absence of a provision in the writing of October 1, 1868, arranging for payment of taxes upon the park, they were legally chargeable to the holder of the title. The payment of taxes by private persons upon public property neither works an estoppel against the public nor passes title to the taxpayer. City of Uniontown v. Berry, 72 S. W. 295, 24 Ky. Law Rep. 1696; Busse v. Covington, 38 S. W. 865, 39 S. W. 848, 19 Ky. Law Rep. 157.

There was never an express renunciation by the Elliotts of the trust created by the contract of October 1, 1868, or notice to the parties to that contract or the city of Louisville of such renunciation; nor was there ever any use of the property by them which made it impossible to carry out the trust by conveying it to the city whenever the boundary was extended so as to include it. The trust was, therefore, a continuing and subsisting one, unaffected by the statute of limitation. Ky. St. 1903, § 2543; Robinson's Committee v. Elam's Ex'x, 90 Ky. 304, 12 Ky. L. R. 271; 14 S. W. 84; McRoberts v. Carneal (Ky.) 44 S. W. 442. Such of the appellees as are owners of the lots adjacent to Elliott Park, purchased of the Elliotts, have a right in common with the city of Louisville to enforce the trust.

The alleged revocation relied on by appellant as arising from the bringing of this action cannot pre-

Elliott v. City of Louisville, &c.

vail. A mere offer to dedicate may be revoked at any time before its acceptance; but the dedication here was not a mere offer. It was a grant based upon a valuable consideration, which passed at the time the contract was entered into, and the contract on the part of Elliott's grantees has been executed. We think the city of Louisville and its board of park commissioners are authorized to take and hold property for the public use. Consequently they could accept Elliott Park and take the title to the same for the purposes expressed in the writing of October 1, 1868. Ky. St. 1903, §§ 2742, 2848, 2851, 2858; Peynado's Devisees v. Peynado's Ex'r, 82 Ky. 5, 5 Ky. L. R. 713; City of Louisville v. Louisville University, 15 B. Mon. 642; City of Lexington v. Kentucky Chautauqua, 114 Ky. 781 24 Ky. L. R. 1568; 71 S. W. 943.

Wherefore the judgment is affirmed.