ELLSWORTH COLLEGE OF IOWA FALLS, et al., Appellants,
   v. EMMET COUNTY, J. C. LOVELL, Treasurer, et al.,
   Appellees.

**Wills:** TRUSTS: ESTATE CREATED. A devise of land to trustees, with
1  power of sale and direction to set aside a portion for the establishment, erection and the maintaining of a charitable institution, the balance to be paid to the trustees of a certain college as an endowment fund, passed the legal title to the trustees under the will, with the equitable ownership in the ultimate beneficiaries. By the devise in this case an active trust was created to which the statute of uses does not apply.

**Taxation:** TRUST PROPERTY: EXEMPTION. Generally all property held
2  under a testamentary trust is to be taxed to the trustee; but under our statute the bequest in this case to the educational insti-

. tution as an endowment fund is exempt from taxation, while that portion of the bequest for the charitable institution was subject to taxation, in the absence of any showing of the nature of the institution when established.

Trusts: INTEREST OF BENEFICIARIES. Ordinarily the rents and profits and the increased value of trust property accruing before actual conversion go to the beneficiary.

*Appeal from Emmet District Court.*—HON. A. D. BAILIE, Judge.

WEDNESDAY, APRIL 3, 1912.

SUIT in equity to set aside and cancel a tax levied upon certain real estate in Emmet County, to enjoin the collection of said tax, and for other equitable relief. Decree dismissing the petition, and plaintiffs appeal.—*Reversed and remanded.*

*Nagle & Nagle* and *Birdsall & Birdsall* for appellants.

*J. W. Morse* for appellees.

DEEMER, J.—The case involves a construction of paragraph 2 of section 1304 of the Code Supplement as it existed when the taxes complained of were levied against certain real estate in Emmet county. That part of the section referred to, so far as material, reads as follows:

The following classes of property are not to be taxed: . . . (2) All grounds and buildings used for public libraries, including libraries owned and kept up by private individuals, associations or corporations for public use and not for private profit, and for literary, scientific, charitable, benevolent, agricultural and religious institutions, and societies devoted solely to the appropriate objects of these institutions, not exceeding one hundred and sixty acres in extent, and not leased or otherwise used with a view to pecuniary profit, but all deeds or leases by which such

property is held shall be filed for record before the property above described shall be omitted from the assessment; the books, papers and apparatus belonging to the above institutions, used solely for the purposes above contemplated, and the like property of students in any such institution used for their education; moneys and credits belonging exclusively to such institutions, and devoted solely to sustaining them, but not exceeding in amount or income the amount prescribed by their charters or articles of incorporation; provided, however, that real estate owned by an educational institution of this state, as part of its endowment fund, shall not be taxed.

We may say parenthetically, in order that there may be no misunderstanding of the written law, that the proviso found in the last sentence of the paragraph was repealed by chapter 61, Acts 34th G. A., and a substitute enacted. With this substitute we have nothing to do, for the taxes complained of were levied before the adoption thereof. The lands in question were taxed by the authorities of Emmet county as other real estate for the years 1909 and 1910. They were owned by Eugene S. Ellsworth, deceased, at the time of his death, which occurred in February of the year 1907, and passed by a will from which we shall presently quote at some length. Ellsworth College is an institution of learning organized some years ago under the statutes of this state for literary, scientific, and educational purposes, with its principal place of business at Iowa Falls, in Hardin county. Admittedly it is such an educational institution as is referred to in the paragraph from the Code Supplement just quoted. The only question in the case, then is this: Where the lands in controversy "real estate owned by the college as a part of its endowment fund" at the time the taxes were levied and assessed?

This inquiry can be answered only by reference to testator's will construed in connection with such allegations of the petition as may properly be considered, for the case was decided by the court below upon a demurrer to the

petition. The petition contained by reference a copy of the will, an order for the probate thereof, letters testamentary to E. O. Ellsworth and F. A. Gowan as executors, articles of incorporation of Ellsworth College, and certain amendments thereto. What are called the amended and substituted articles of incorporation adopted in July of the year 1907 name the following persons as trustees: "S. M. Weaver, F. D. Peet, E. O. Ellsworth, W. H. Woods, J. H. Carleton, Z. K. Hoag, William Weldon, John B. Parmelee, and Hattie A. Ellsworth." Who the original trustees may have been the record does not disclose. Coming now to the will we find the following provisions material to the proper determination of the case: After devising certain real estate, and personal property to his wife, children, and certain other relatives and making certain bequests to various charitable and eleemosynary institutions, testator made the following provisions: "(12) I give, devise, and bequeath to Ernest Orlando Ellsworth, John B. Parmelee and W. H. Woods all of Iowa Falls, Iowa, as trustees, to be held by them in trust." (Here follows the description of many tracts of land, including that in controversy.) The will then provides: "Said trustees are given full power and authority to sell said real estate for the best obtainable prices and to make conveyances therefor, and they are hereby directed to sell the same as soon as it can be done to reasonable advantage at not less than the following prices." (Here follows the description of the lands with prices affixed.) The will then reads: "The said trustees are directed to devote the proceeds from the sale of the above-described lands as follows:

First. Twenty-five thousand ($25,000.00) dollars of the sum or sums received from the sale of said land shall by them be set apart for the purpose of building and maintaining a home for the aged at Iowa Falls, Iowa, said home for the aged to be under the control of five (5) trustees, of which my wife shall be one, the other four of

whom shall be residents of Iowa Falls, Iowa, and who shall in the first place be appointed by the trustees first above named and shall hold their office for the term of one (1), two (2), three (3), four (4) and five (5) years respectively, and their successors shall be appointed by the judge of the district court at a session of said court in Hardin county, and on their appointment, giving bond and qualification of said trustees, the twenty-five thousand ($25,000.00) dollars of proceeds derived from the sale of said lands shall be paid to them and of said fund, and not to exceed ten thousand ($10,000.00) dollars of said fund may be used in the erection of buildings and improvements upon the following described real estate. (This is followed by a description of the real estate upon which the home is to be located.) The will then proceeds:

It is my wish that the benefits of said home for the aged to be opened in the first instance to residents of Iowa Falls, Iowa, such residents always being entitled to precedence in the matter of admittance. Then, if the accommodations will permit, to residents of Hardin county, and lastly, to residents of other parts of the state of Iowa.

Second. From the remainder of the proceeds derived from the sale of said lands, I direct my said trustees to pay to the trustees of Ellsworth College of Iowa Falls, Iowa, for the sole use and benefit of such college as an endowment fund, and to pay from the proceeds derived from the sale of said land, incumbrances, if any, upon the said lands, also to pay incumbrances, if any, upon Ellsworth College except such as are held by me, and to pay the balance to the trustees of Ellsworth College as an endowment fund for said college, the income to be used for the support of the school, and I direct my executors to release all mortgages held by me against said Ellsworth College and to cancel and surrender the notes of said college held by me. The funds received from the sale of said lands and paid to the trustees of said college shall be invested in United States bonds, state or municipal bonds or first mortgages on farm lands in the state of Iowa or Minnesota.

A residuary clause is included in the will, and E. O. Ellsworth, L. E. Jones, and F. A. Gowan were named as executors. It will be noted that one of these, to wit, E.

O. Ellsworth, was also made a trustee under the will, and it is to be inferred perhaps, although not charged in the petition, that the three trustees named in the will are the same persons of that name who, with six others, constituted the trustees of the college. If that be true, no reliance is put upon that fact, however, and the claim made in the petition is that the property was devised to the trustees named in the will in trust for the college as part of its endowment fund. It is charged in the petition that, after the payment by the trustees of the money received from the sale of the lands to the trustees of the home for the aged to be established after testator's death, the remainder of the funds received from the sale of the lands were to be paid by said trustees to the trustees of the college for the sole use and benefit of said college and as an endowment fund; the income to be used for the support of the school. The petition further alleges:

That under and in pursuance of the terms and provisions of the said will of the said Eugene S. Ellsworth, deceased, the said trustees therein named, Ernest O. Ellsworth, John B. Parmelee, and W. H. Woods, accepted said trust, and on or about April, 1907, qualified as such trustees and took possession of all of said real estate, and have ever since been in possession thereof of said trustees under the provisions of said will. That under and by virtue of the provisions of said will and the probate and record thereof as hereinbefore set forth, said real estate became, constitutes, and is a part of the endowment fund of said college and to build and maintain at Iowa Falls, Iowa, a home for the aged, and has so been at all times since the probate and record of said will, and said real estate is held and administered as such endowment, and the rents and profits derived therefrom are devoted exclusively to the maintenance of said college.

These are only the relevant facts as gathered from the record, and the primary inquiry is: Was the land in Emmet county real estate owned by the college as a part of

its endowment fund at the time the taxes were levied against
it? It is manifest that the devise was not
to the college directly, nor to trustees
of the college as such, and it is also apparent that the
devise of the legal title is to trustees, who are directed
to sell the lands at given minimum prices; and from the
amounts so received to pay a given sum to the trustees
for a home of the aged, and from the remainder of the
proceeds derived from the sale he directed his trustees to
pay the trustees of the college, for the sole use thereof as
an endowment fund, the income, to be used for the support
of the school, and he also provided that the funds to be
paid to the trustees of the college should be invested in
United States or municipal bonds or in first mortgages
upon farm lands.

*1. WILLS: trusts: estate created.*

It is quite clear that in this neither the college nor its
trustees secured the legal title to the lands or any part
thereof under the will. The most that can be claimed is
that the trustees named in the will held the legal title in
trust for the college, and that in fact it was the equitable
owner of the land. It is well settled that, under such a
will as we have here, the trustees took the legal title, or,
as some of the cases put it, the fee-simple title. See cases
cited in 28 Am. & Eng. Ency. of Law (2d Ed.) page 925;
*Welch v. Allen,* 21 Wend. (N. Y.) 147.

The trust is an active one, and the statute of uses
does not apply. In other words, the statute does not
execute the trust. *Newhall v. Wheeler,* 7 Mass. 189; *Wood
v. Wood,* 5 Paige (N. Y.) 596 (28 Am. Dec. 451).

As a general rule, real and personal property held
under a testamentary or other trust is taxable to the trustee
or trustees, and not to the *cestui que* trust or beneficiary.
*Goodsite v. Lane,* 139 Fed. 593 (72 C. C.
A. 281, 2 Ann. Cas. 849), and note; *Elliott
v. Louisville,* 123 Ky. 278 (90 S. W. 990);
*Dunham v. Lowell,* 200 Mass. 468 (86 N. E. 951); *Rich-*

*2. TAXATION: trust property: exemption.*

*ardson v. Boston,* 148 Mass. 508 (20 N. E. 166); *Trowbridge v. Horan,* 78 N. Y. 439; *Green v. Mumford,* 4 R. I. 313; *Catlin v. Hull,* 21 Vt. 152. These are the general rules everywhere announced, without reference to any statutory exemptions.

But it is claimed that the home for the aged yet to be created and Ellsworth College were and are the equitable owners, not only of the property, but of the income therefrom, and that as the property to which the college is entitled is expressly made a part of its endowment, it is exempt from taxation under the statute hitherto quoted. That statute does not require that the college be the owner of the legal title to the property. It says that real estate owned by an educational institution as part of its endowment fund shall not be taxed. The word "owned" is broad and undoubtedly comprehends an equitable, as well as a legal, ownership, and the question of exemption, so far as the interest of the college is concerned, depends primarily upon whether or not the college is the equitable owner of the property devised and of the income derived therefrom while the property is in the name of the testamentary trustees. Manifestly we think the income from the property, aside perhaps from such part thereof as might be necessary to take care of the gift to the home for the aged, belonged to the college; and it is equally clear that the college was the equitable owner of the property devised subject to the trust for the home for the aged yet to be created. It appears from the record that the income from the property has been paid to the college and that all parties have put this construction upon the will. These facts, while not controlling, are entitled to great weight.

3. TRUSTS: interest of beneficiaries.

Certainly is it true that the increase in the value of lands goes to the college. Indeed, it is the general rule that, under a devise of lands to a trustee or trustees to be converted into money for the benefit of a *cestui que*

trust, the rents and profits accruing before actual conversion is accomplished, pass to the beneficiary under the will. Lewiston, Trusts (12th Ed.) 1223; *Moncrief v. Ross,* 50 N. Y. 431; *Sargent v. Sargent,* 103 Mass. 297; *Lent v. Howard,* 89 N. Y. 169.

It is manifest that under the terms of the will no part of the income before conversion is to pass to the home for the aged. This income, as well as the proceeds of the property after conversion, with the income therefrom, are expressly made a part of the endowment fund of the college, and this fact gives color to the equitable ownership of the college in the lands devised to the trustees. By the terms of the will, the trustees are to convert the real property into money for a permanent endowment of the college, and, in determining the nature of the equitable ownership or title to the lands, a court of chancery regards that as done which is directed to be done. Of course, the doctrine of equitable conversion does not apply to revenue statutes and convert real estate into personalty or personalty into real estate; but in dealing with the subject of taxation and construing exemption statutes the doctrine of equitable conversion may be resorted to in order to ascertain the nature of the equitable ownership of the beneficiary. See, as supporting this view, *Gould v. Asylum,* 46 Wis. 106 (50 N. W. 422); Dodge v. Williams, 46 Wis. 70 (1 N. W. 92, 50 N. W. 1103).

By the devise in question the trustees were given the legal title to the land, and while the beneficiaries had no interest in the legal or equitable estate expressly devised to the trustees, yet the equitable interest must necessarily have vested in some one. In order to ascertain who the quitable owners are, the court must inquire for whose benefit was the trust created. That being ascertained, the person or persons who are to be the ultimate beneficiaries are regarded in equity as the equitable owners. *Pearson v. Lane,* 17 Ves. 101.

It is well settled, of course, that a trustee such as created by the will in question is not the holder of a beneficial interest. He holds the legal title merely to perform the duties imposed by the trust.

In *Montgomery v. Wyman*, 130 Ill. 17 (22 N. E. 845), the Supreme Court of Illinois said:

No matter where the legal title to the operation of the statute if the institution is the ultimate or beneficiary owner. Most usually the title is held by the society or corporation which manages and controls the institution of learning, but not necessarily so; for there may be no corporation or organized society, and yet be 'an institution of learning' in respect to which the ownership of property, within the true intent and meaning of the law, can be predicated. But in such case, it would seem, there must, in the nature of things, be a trustee or trustees, to hold the legal title to the property, in trust for the purposes and objects of the institution of learning. The idea of ownership of property can only be connected with that which we call 'an institution of learning' by means of the interposition of either a society, or corporation, or a trust. If the title is in the controlling corporation, or if it is vested in a trustee or trustees, for the objects to be accomplished through the instrumentality of the institution, in either event the property is, within the contemplation of the statute, the property of the institution of learning. [See, also, *Gerke v. Purcell*, 25 Ohio St. 229; *In re Norton's Ex'rs v. City of Louisville*, 118 Ky. 836 (82 S. W. 621)].

In the case last cited it is said:

While the beneficiary of the trust fund is not given the immediate care and control of it, it is the equitable owner of it, and it could not rightfully be diverted to any uses or purposes other than those designated by the testator. If the condition required it, the beneficiary could by appropriate proceedings rescue the fund from any misappropriation of it. It is the owner of the fund, though temporarily controlled by others. While Norton and Barr are designated as trustees under the will, still they are the trustees for the beneficial owner. They are accountable

to it for the management of the property and the execution of the trust. The practical effect of the provision of the will under consideration is that the fund is given to the orphans' home, but it is to be managed for it for the specified time by the trustees named by the testator. If the income from the property or from its proceeds were to go to another during the five years, then it would be very clear that the property or fund should be taxed under that period. When one is the equitable owner of property and is entitled to the income from it, he has the enjoyment of every benefit that could come to any one who might own the property. To hold that the property should be taxed because it is controlled by others than the trustees of the orphans' home for a specified period is giving effect to the shadow, and not the substance, of things.

In *Williston Seminary v. County,* 147 Mass. 427, 18 N. E. 210, the Supreme Court of Massachusetts said:

An ordinary *cestui que* trust has a property in a fund held for his benefit; he has a right and interest which he may vindicate in various ways. If trustees violate their duty, make improper investments, misuse or misappropriate the funds, the *cestuis que trustent* may bring them to account, and are the proper persons to do so. But especially in the present case the property held in trust is to all practical intents and purposes the property of the seminary. The legal title is in the trustees; but the whole beneficial interest, unless indeed the annuitants are to be taken into account, is in the seminary. It would be a strained construction of the statutes to hold that this fund is to be considered as property of the seminary for the purpose of taxation but not for the purpose of exemption. The more natural and reasonable construction is that personal property which, under the general tax laws, would otherwise be taxable to the enumerated institutions, shall be exempt from taxation. . . . For the purpose of taxation, it is to be deemed their property. They are the taxable owners. Nobody else can be assessed for it. In the present case, the seminary, as a body politic and corporate, stands as the person for whose future benefit the fund is held, and therefore, according to the method prescribed by the general provision of law, would be taxable

for it. But, under the exemption clause, its personal property is exempt from taxation.

The following cases are to the same general effect: *State v. Watkins,* 108 Minn. 114 (121 N. W. 390); *State v. Johnston,* 65 N. J. Law, 169 (46 Atl. 776); *Masonic Society v. City,* 201 Mass. 320 (87 N. E. 602); *People v. Wells,* 179 N. Y. 257 (71 N. E. 1126).

Following these rules, it is apparent, we think, that the lands were exempt from taxation, except perhaps to the amount of the devise to the home for the aged yet to be created. As to that institution, a different question is presented. The home has not yet been created, and no one knows what the nature of the institution will be when it is established. Moreover, there are no allegations in the petition which would exempt the property were it or any part of it owned by the home. The trustees were specifically directed to set aside from the proceeds of the sale of the land the sum of $25,000 for the purpose of building a home for the aged at Iowa Falls, and the residue was given to the college as a part of its endowment. This home for the aged, although not yet created, was as much the beneficial owner of $25,000 of the funds to be derived from the sale of the lands as was the college to the remainder, and there is no showing whatever which would justify an exemption of that amount out of the lands. If the devise could be so treated as to vest the equitable ownership of the entire property in the college with a charge against it to the extent of $25,000, a different question would be presented. But the will will not bear such interpretation. The gift to the home was quite as specific as to the college, and each has an equitable ownership in the lands; the home to the extent of $25,000, and the college to the remainder. No sound legal or equitable reason appears why the lands should be wholly exempt because the college is entitled to the larger share of the funds. Its equities are no greater than those of the home

for the aged, and neither the money nor the property given to the home is exempt under any statute to which our attention has been called. The result of the whole matter is that the lands were exempt from taxation in the hands of the trustees, save as to the amount given in trust for the establishment of the home for the aged, to wit, the sum of $25,000. To that amount and to that only should the lands have been assessed. In other words, there should have been deducted from the total value of the lands assessed all in excess of $25,000. As this was not done, but the lands were decreed to be assessable to their full value without any exemption the decree must be reversed, and the cause remanded for one in harmony with this opinion.—*Reversed* and *remanded*.

WEAVER, J., taking no part.