## City of Henderson v. Yeaman, et al.

(Decided April 18, 1916.)

### Appeal from Henderson Circuit Court.

1. Municipal Corporations—Streets—Limitation—Notice of Adverse Possession.—Under section 2546 of the Kentucky Statutes, limitation does not begin to run against a city for the recovery of a street or public way until it has been notified in writing by the party in possession that he will attempt to hold it adversely to the right of the town or city.

2. Municipal Corporations—Streets—Dedication—Acceptance — When Necessary.—The dedication of a street or public way in a city to public use will not for all purposes convert the place so dedicated into a street or public way or charge the city with its care. The mere act of dedication, or the use of dedicated territory by the general public, however long it may have continued, does not put upon the city the duty of acceptance or charge it with the care of the place.

3. Municipal Corporations—Dedication of Street—Effect of—Acceptance Not Necessary.—When a town or city is laid off with streets set apart for public use, the city authorities are not required to take physical possession or control of each street or to improve it in order to save their right to reclaim it against any person who undertakes to hold it adversely. A city may delay manifesting this acceptance by control or improvement as long as it pleases. Nor is there any period fixed in which a street so dedicated must be taken possession of by the city or improved by it in order to prevent an abandonment.

4. Municipal Corporations—Streets—Non-user Does Not Work Abandonment.—Neither the mere non-user by the public of a street dedicated to public use, no matter how long the non-user may exist, nor the failure on the part of the city authorities to take some affirmative action, however long such non-action may continue, will work an abandonment of it for the purposes for which it was dedicated. Nothing short of some affirmative act on the part of the city manifesting its purpose to abandon a street will work an abandonment.

B. S. MORRIS for appellant.

YEAMAN & YEAMAN for appellees.

OPINION OF THE COURT BY JUDGE CARROLL.—Reversing.

The city of Henderson was laid out in 1797 by a company that then owned the land on which the city was subsequently established. This company made a plat of the proposed city, dividing it into 132 squares contain-

ing four acres each. These squares were laid off into lots of convenient size, each lot being numbered consecutively from one up. Two streets were laid off one hundred feet wide running parallel with the river, and ten cross streets one hundred feet wide were also laid off running at right angles from the river. All of the lots shown on the plat, which was recorded in the clerk's office of Henderson county, called for the streets on which they abutted, although it does not appear that any of the streets were then named.

It further appears that immediately following the laying out of the city, an instrument called an ordinance was adopted by the company and placed on record, in which it was set out that the lots and streets shown on the plat should constitute the town of Henderson and the lots be disposed of to any person who might want to buy them, and, as will appear later on, the numbers of the lots given in this plat are yet recognized in transfers of property in the city.

The street set apart on the map nearest to and running parallel with the Ohio river is now known as Water street, and running parallel with this street the next street is now known as Main street. From Main street to the Ohio river, crossing Water street at right angles, a street was set apart on the plat of the town one hundred feet wide, and this street is now known as Dixon street. When these streets were first named does not appear, but it is evident that they were given the names they now bear many years ago.

In 1877, S. A. Young purchased a lot fronting on Main street and abutting on Dixon street. The deed conveying the land to Young described it as a house and lot "beginning at a stake corner of Dixon and Main streets and running thence in a northerly direction on main street 70 feet to a stake; thence in a westerly direction and at right angles 208 feet and 8½ inches; thence at right angles in a southernly direction 70 feet to a stake in the line of Dixon street; thence with the line of Dixon street in an easterly direction 208 feet and 8½ inches to the beginning, and being part of lot 143 on the original plat of the city of Henderson."

It will be noticed that the deed conveying this lot to Young recognized Dixon street as one of the lines of the lot, and when Young bought it he did not have or set up any claim to any part of Dixon street. Indeed,

under the conveyance to him he could not well have done this, because the deed did not purport to convey to him any part of Dixon street.

It further appears that although the street now known as Dixon street was recognized and set apart on the plat of the city as a public way, it was never improved by the city in any manner or used generally by the public as a street, at least between Main street and Water street, the reason for this being that from Main street to Water street Dixon street is in a sparsely settled part of the city, and a deep ravine interfering with travel runs in the street beginning at a point near Main street and getting deeper and wider towards Water street.

With this situation existing, Young, soon after he bought the lot, commenced filling up the ravine in Dixon street adjoining his lot, so that he might have a way to get into his lot from Main street by going down Dixon street. After filling up the ravine in Dixon street, Young annexed to his lot a strip of Dixon street 40 feet wide and 208 feet and 8½ inches deep from Main street; and after having it in possession for probably fifteen years, enclosed by a fence that he built in part, he sold this strip to the appellee, Mrs. Yeaman, in 1911.

In 1913 the appellee, Mrs. Yeaman, brought this suit in equity against the city of Henderson for the purpose of having her title to this strip of ground quieted, stating in her petition that she was the owner and in the actual possession of the land claimed, and that the city of Henderson was asserting ownership to it.

For answer to this suit the city set out the laying off and establishment of the city as heretofore stated, and that Dixon street had been dedicated and set apart as one of the public streets of the city and had been recognized as one of the streets from the time of the laying off of the city, and it was consequently entitled to have it adjudged one of the streets of the city.

In a reply, after traversing the answer, Mrs. Yeaman pleaded that she and those under whom she claimed had been in the adverse and continuous possession of the land in controversy for more than fifty years, and that the city had never set up any claim to it until shortly before this suit was brought.

A rejoinder completed the issues, and after the evidence had been taken, the case was submitted and it was adjudged that Mrs. Yeaman was the owner of and en-

titled to the quiet enjoyment of the land in dispute. From this judgment the city appeals.

In addition to the foregoing facts the evidence further shows that about 1850, or at any rate at least more than fifteen years before 1873, a fence was built across Dixon street where it intersected Main street, and for many years prior to 1873 there was also an old fence across Dixon street between Main street and Water street, and these remained, although in a dilapidated condition, until Young appropriated that part of Dixon street heretofore mentioned. Who built these fences across Dixon street or why they were built, the evidence does not show. Plainly they were not put across the street by any person with the view of taking possession of the street enclosed by these fences or setting up any adverse claim thereto, because there is no evidence in the record that any person at any time or in any manner asserted any adverse claim to any part of Dixon street until Judge Young enclosed that part of it that now constitutes the lot in controversy. So that in determining the beginning and the length of time there has been an adverse holding of any part of this street we cannot go back any further than 1877 when an adverse claim to the part now in controversy was first asserted by Judge Young. He is the first person who appears to have actually taken possession of any part of the street with a view of appropriating it to his own use, and his possession only dates from 1877.

It is a further matter about which there is no dispute that Judge Young did not at any time notify in writing the trustees or the council of the city that he was about to or had taken possession of this strip of ground with a view of claiming and holding it adversely, nor did he give the city authorities any notice whatever of any kind of his assertion of right to the possession of this lot.

It is important that the time when this adverse holding and assertion of right commenced, as well as the failure of Young to give the notice indicated, should be kept in mind in view of section 2546 of the Kentucky Statutes, which became a law in 1873. This statute as it has been in force since 1873, reads as follows:

"The limitations mentioned in the first article of this chapter shall not begin to run in respect to actions by any town or city for the recovery of any street, alley, or other public easement, or any part of either, or the use

thereof in such town or city, until the trustees, or the council or the corporation, by whatever name known or called, have been notified in writing by the party in possession, or about to take possession, to the effect that such possession will be adverse to the right or title of such town or city. Until such notice is given, all possession of streets, alleys and public easements, or any part of either, in any town or city, shall be deemed amicable, and the person in possession the tenant at will of such town or city."

Considering this statute in connection with the undisputed facts, it is apparent that the right of Mrs. Yeaman to the possession of the part of this street claimed by her cannot be sustained on the theory that it was adversely held by her and those under whom she claims, if Dixon street is to be treated as one of the streets or public ways of the city, because, in the absence of the notice provided for in section 2546, the statute of limitation never commenced to run against the city after Young took adverse possession of the part of the street in question, and there was no adverse holding prior to his occupancy.

The right, therefore, of Mrs. Yeaman to hold this lot against the claim of the city, if she has such right, must be put as urged by her counsel on the ground that Dixon street was not at the time it was appropriated by Young or subsequently one of the streets or public ways of the city, and if this were so, the statute quoted would have no application to the case. If Dixon street was not at the time Judge Young appropriated part of it, or subsequent thereto, a street or public way of the city, then the right to claim it by adverse possession would be controlled by section 2505 of the statutes providing that an action for the recovery of real property can only be brought within fifteen years after the right to institute it first accrued to the plaintiff or to the person from whom he claims, and as Judge Young and Mrs. Yeaman had actual, adverse and continuous possession of this lot for more than fifteen years previous to the institution of this action, the right of the city to recover the lot would be barred by limitation.

The question, therefore, recurs, was the place called Dixon street a street or public way of the city at the time that Judge Young enclosed and took adverse possession of the lot now claimed by Mrs. Yeaman?

On behalf of Mrs. Yeaman the argument is made that although in the original plat of the town what is now known as Dixon street was set apart by the owners of the land as one of the streets and public ways of the proposed city and dedicated to the use of the public, it was never accepted in any manner by the city authorities as a street or public way and so is not now and never was a street or public way of the city. In support of this argument our attention is called to the cases of Gedge v. Com., 9 Bush 61; City of Latonia v. Agricultural Assn., 139 Ky. 732; Mulligan v. McGregor, 165 Ky. 222.

In the Gedge case it appears from the opinion, which was handed down in 1873, that in 1852, W. K. Wall conveyed to the Covington and Lexington R. R., a small parcel of ground adjacent to the town of Cynthiana, to be held by the railroad company for the purpose of a depot, including a street thirty feet wide which was to be kept open for the public use. The railroad company took possession of the ground under the conveyance and used it in connection with the public. The thirty feet of ground designated as a street by the conveyance was never marked off either as a street or road. The only use the public made of it was in crossing it in order to get to the depot. In 1871 the railroad company constructed a switch in such a way as to obstruct the travel upon this thirty feet, and was indicted for creating and continuing a nuisance in and across the public street and highway of the town of Cynthiana. In holding that the indictment would not lie because there had never been any acceptance of this street by the city, the court said:

"The deed from Wall establishes the dedication of the ground for public use, and the only question to be considered is, can the Commonwealth maintain an indictment against the railroad company for a nuisance in obstructing its way created by the grant from Wall in the absence of any other acceptance by the public than the mere user in crossing it? The right in Wall to make the dedication of the ground to be used as a street or highway is unquestioned, but such a dedication does not compel the town of Cynthiana to improve the street or keep it in repair.   *   *   *   A road or street dedicated to the public must be accepted by the county court or town, either upon their records or by the continued use and recognition of the ground as a highway for such a length of time as would imply an acceptance.   *   *   *

"In the present case the ground, or the most of it, conveyed by Wall to the railroad company was left vacant and uninclosed from the year 1854 until the year 1868, and during this whole period the public used the ground of the company as much as they did the thirty feet of ground dedicated for the street. The entire open space was used by the public in their ingress and egress to and from the depot and cattle pens of the company. The ground in controversy had never been even marked out or used as a street by the trustees of the town of Cynthiana, and there was no acceptance by them, either expressly or by implication, of the dedication. The fact of the town limits having been extended so as to embrace the ground where the switch was constructed is not an acceptance of the benefit of the grant from Wall; and if the acceptance had been shown, still, as there was no street marked out or used by the public on the ground designated, this indictment could not be sustained against the appellants for the obstruction complained of."

In the city of Latonia case, decided in 1908, it appears that in 1869 one Jones made a plat of his farm situated outside the city limits of the city of Covington, laying off the land into town lots and dividing them by streets and alleys. In 1894 the city of Latonia was organized, and in 1900 its boundaries were extended so as to annex a part of the land that had been laid out into lots and streets by Jones. In 1882 the Latonia Agricultural Association bought about two hundred acres of the land Jones had thus laid off for a city site and converted it into a race track. After it had been enclosed and used as a race track for about fifteen years the city of Latonia undertook to open up through the race track grounds the streets laid off in the Jones plat, and thus the litigation arose. In holding that the streets shown on the plat of the Jones subdivision could not be opened through the grounds occupied by the race track because they had never been accepted as streets or public ways by the city of Latonia or any public authority, the court said:

"The property in question was outside of the city of Latonia at the time of the attempted dedication by the Jones plat. The attempt to establish a town on the Jones farm had been abandoned. The appellee purchased all the property platted except a few lots, buying out all adverse interests of lot-holders within its boundary. It held the property adversely for more than fifteen years

before the right of the city of Latonia (assuming it to have a right) to claim the streets arose, or could have arisen. The bar of the statute was complete long before the city of Latonia annexed the property of appellee. It has erected upon the land improvements said to be worth from two hundred thousand to two hundred and fifty thousand dollars. To permit the city to project the streets in question through its property now would be to entail upon it a complete loss of the property as a race track. No court would permit this to be done without the establishment on the part of the city of a clear legal right so to do.''

In the Mulligan case the question was whether the city could charge property owners with the cost of improving certain ways that had been set apart for the public use in connection with the sale of lots, and it was held that as the city had never accepted these public ways in such manner as to constitute them streets of the city in accordance with section 3094 of the statutes, the property owners could not be charged with their improvement, saying: ''The dedication of a street or public place to public use and its use by the general public does not make it a part of the public ways of the city until it has been accepted by the city. Under the common law as well as the statute acceptance is necessary to convert the dedicated territory into a public way or street of the city. The mere act of dedication, or the use of the dedicated territory by the general public, however long it may have continued, does not put upon the city the duty of acceptance, nor can the city be charged with the care of a public place merely by the dedication of it to a public use. Whether the city will assume the burden that follows acceptance rests with it.''

We have set out these cases at some length for the purpose of showing that while they sustain, as do many others, the contention of counsel for Mrs. Yeaman that dedication without acceptance will not for all purposes convert a place into a street or public way or charge the city with its care, we are yet of the opinion that they should not be followed as controlling authority in the disposition of the case we have. In no one of them was the question here presented directly involved, and in each case the decision was put on the existence of material facts that do not appear in this record.

Returning to our case, the street now called Dixon

street was one of the streets set apart as a public way when the town of Henderson was laid off; and so it remained without occupancy or adverse claim on the part of any person until 1877. Until that time no person had asserted any adverse claim to it or appropriated any part of it to his own use. Continuously from the beginning it had retained its character as a street. It is true it had not been improved by the city or any property owner and remained in the same condition it was in when first set apart as a street. But the mere fact that the city failed to improve the street, or its non-user by the public, did not work an abandonment of it as a street.

When streets are set apart and dedicated to the public use, and a town or city is built on the ground so laid off for this purpose, the city authorities are not required to take physical possession or control of each street or to improve it in order to save their right to reclaim it against any person who undertakes to hold it adversely. Nor is there any period fixed by statute or judicial ruling in which a street so dedicated must be taken possession of by the city or improved by it in order to prevent an abandonment. The city may delay manifesting its acceptance by control and improvement as long as it pleases. It may wait until the needs of the public or the city require its improvement, and in the meantime, and since the statute of 1873, no person may take possession of a street dedicated to public use, although there may have been no recorded acceptance of it or overt act of control, without giving the statutory notice of his intention to appropriate it.

If mere non-user by the public, or failure on the part of the city authorities to take some affirmative action looking towards the acceptance of land dedicated to public use as a street or way, would work an abandonment of it for the purpose for which it was dedicated to the extent that private individuals might boldly take possession of the ground so dedicated and convert it to their own uses, the city as well as the public might be deprived of valuable property and the right to use and occupy land that had been set apart for public purposes. Nor do the authorities support the claim here made that the non-user of this street by the public and the failure of the city to indicate its acceptance of it by some affirmative act between the time it was dedicated to public use and 1873, had brought about an abandonment that left

this land in 1873, as well as in 1877, free to be taken possession of by any person who might assert a hostile, adverse claim to it and hold it under such claim for fifteen years.

It should be kept in mind that soon after the town of Henderson was laid off and Dixon street and the other streets set apart for the use of those who might inhabit the city, a town was in fact established on the site laid off, which soon grew into a city of several thousand people; and this street, which was in the beginning within the corporate limits of the town, has always remained within the corporate limits of the city. The land known as Dixon street was a street when Judge Young, in 1877, took possession of a part of it. The public and the city had the same claim and right to it in 1877 that the public and the town had when Henderson was first established as a town. It remained as it was when first set apart as a street.

The city at all times had the right to improve it, and the public at all times had the right to the use of it. Acceptance in some form was of course necessary before the city could be charged with the duty of maintaining it in good condition for travel and before it could be made liable in damages to any person injured by its unsafe condition; although acceptance of this nature was not necessary to enable the city to retain and hold the possession of the street for the uses to which it was dedicated. Nothing short of some affirmative act on the part of the city manifesting its purpose to abandon the street could work an abandonment, and the record does not disclose any such act. It had not lost in the years of its existence any of the characteristics of a street, nor had the purpose of its dedication been interfered with by any hostile claimant until 1877. If it was a street in 1797, so it was a street in 1877. The fact that the city had not improved it, or the fact that the public had not used it, did not extinguish the purpose for which it was dedicated or authorize its appropriation by one who had no right or title to any part of it. Judge Young entered upon this street as a trespasser and took possession of it without any color or pretense of title, although, except for the statute of 1873, his adverse holding and occupancy would have barred the right of the city. But the statute of 1873 protected the street against adverse holding subsequent to that time as the notice provided for

in the statute was not given to the city, and so the right of the city to reclaim possession is not barred by limitation.

The leading case in this State on this subject is Rowan's Exors. v. Town of Portland, 8 B. Mon. 232. The facts in that case are very similar to the facts in the case at bar, and the court, in an elaborate opinion, reached the conclusion that when a town is laid off with designated streets and public ways and afterwards a city is established on the site, the ground designated for public use must be taken to have been irrevocably dedicated to that use. It was further said:

"The dedication having been made and proved by the map and sales and conveyance of the lots with reference to it, did not require a subsequent user to establish or prove it. * * * To say that a dedication to the use of the future town and of the public, made when the site of the town was in a state of nature, would be lost if not followed by immediate and continued use, or should be limited to the extent to which it was thus used, would deprive the dedication of its practical and of its intended value, and would make it a mockery."

In City of Covington v. Hall, 30 Ky. R. 356, the court, in speaking of the dedication of streets to public use by the owner of ground who laid it off for the purpose of establishing a town, said: "When a street has been dedicated in this way the city may accept it when it gets ready, and in the meantime the owners of the lots calling for the streets are estopped, not only as against the other owners, but as against the city, to say that the ground is not a street."

In Elliott v. City of Louisville, 123 Ky. 278, the court said: "It is well settled that the mere non-user of public property—that is, property taken or dedicated to public use—is not an abandonment, no matter how long the non-user may exist."

These cases, which are distinctly in point, are in line with the weight of authority, as may be seen by an examination of 37 Cyc. 195; Dillon on Municipal Corporations, vol. 1 sec. 667; Elliott on Streets and Roads, sections 187 and 1176, and are controlling here.

Wherefore, the judgment is reversed, with directions to dismiss the petition.