## City of Henderson v. Blackwell, et al.

## City of Henderson v. Hall, et al.

(Decided December 3, 1920.)

### Appeals from Henderson Circuit Court.

1. Dedication—Streets—Evidence.—In an original plat and map of the city of Henderson recorded in 1797 certain streets were designated as public streets of the city; thereafter the legislature reduced the city limits but later the boundary was re-established according to the original plat. Held, that in the absence of any proof showing an abandonment thereof the original dedication remained, and when the excluded territory was reincorporated as a part of the city the streets therein came back into the city in the same condition in which they went out, there being no affirmative act showing a contrary intention.

2. Dedication—Streets—Annexation.—A street having been dedicated as a public way of the city of Henderson in 1797 continued as such though the city boundaries were reduced, where the territory, including said street, was later annexed to the city, unless there has been an adverse holding of any portion thereof contrary to its use as a public street.

3. Municipal Corporations—Streets—Limitation of Actions.—By Kentucky Statutes, section 2546, limitation does not begin to run in respect to an action by a city for the recovery of any public way until the city has been notified in writing by the party claiming possession to the effect that such possession will be adverse to the rights of the city.

4. Municipal Corporations—Possession of Streets.—In the absence of the notice required by Kentucky Statutes 2546, the possession of streets and other public ways in a city shall be deemed amicable and the person in possession a tenant at will of such town or city.

5. Municipal Corporations — Apportionment Warrant — Abutting Owners.—In a suit on an apportionment warrant for the construction of a sidewalk, where it appears the sidewalk was constructed on property belonging to the city, the abutting owners having failed in their effort to show title by adverse possession should be required to pay their part of such construction.

6. Adverse Possession—Annexation to City.—Property purchased eight years after it was annexed to the city was not held a suf-

ficient length of time for the owner to have acquired title by adverse possession.

B. C. MORRIS for appellant.

DORSEY & DORSEY for C. T. Blackwell, appellee.

F. J. PENTECOST for C. F. Hall, appellee.

JOHN C. WORSHAM for Ed. Manion, appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

By an appropriate ordinance approved August 5, 1919, the city of Henderson ordered the construction of an artificial stone pavement four feet in width on the east side of Green street from Morris Lane to the city limits.

Ed. Manion was awarded the contract for the construction of this sidewalk and executed bond for the faithful performance of the provisions of the contract.

Upon the completion of the work the costs thereof were apportioned against the property owners liable therefor, including an apportionment of $104.40 against appellee Blackwell and the sum of $141.60 against appellee Hall. Both declined to pay the amounts assessed.

Alleging appellees owned certain property abutting said sidewalk, the contractor filed these suits asserting a lien upon the property to secure the payment of the respective sums above given. The city of Henderson was made a party to each of the suits, which were heard together. It was stated in the petitions that appellees claimed to own the property upon which the aforesaid improvements were made, and therefore were not liable for the assessments, and petitioner prayed that in the event it should be so adjudged that he be awarded judgment against the city for the amount of his claim. Upon final hearing the petitions as to Blackwell and Hall were dismissed and plaintiff was awarded judgment against the city of Henderson for the amounts of the apportionment warrants, together with costs and interest, and it is to reverse said judgments that the present appeals have been prosecuted.

To fully understand the questions presented and the conclusions reached it will be necessary to deal at length with the facts. The legislature of Virginia, in consideration of services rendered in making purchases from the Cherokee Indians, by an act of October, 1778, grant-

ed to Richard Henderson & Company a tract of land lying on the Ohio and Green rivers, containing some two hundred thousand acres. 3 Litt. Laws of Ky. 587.

April 6, 1797, at the request of Gen. Samuel Hopkins, agent for R. D. Henderson & Co., Thomas Allen, according to his certificate and plat filed June 20, 1797, laid off the town of Henderson into lots, streets and alleys, including two streets paralleling the river, ten cross streets and a large open space for a public square. This plat, duly recorded October 29, 1799, in the county clerk's office, included 132 one acre lots on each side of the public square, also 32 out lots of 10 acres each. The Transylvania Company, commonly called the Henderson Company, by an instrument designated as "an ordinance" and which was executed August 9, 1797, and recorded in the Henderson county clerk's office, on the same day as the foregoing plat, duly established the town of Henderson (then in Christian county), according to the survey and plat above referred to, including 264 one acre lots and 32 ten acre out lots, including the streets shown thereon, the streets being 100 feet in width. The street nearest to the river was called Water street, the next paralleling street was Main street, and then Green street. The intersecting streets, first referred to as cross streets in their order at the time the testimony was given in this case were Center, Washington, Powell, Clay, Dixon, Jefferson, Vine, Audubon, Plum, Jackson, Cherry, Hancock, Chestnut streets and Norris Lane.

According to this orginal plat the property involved in the consolidated suits was within the town limits of Henderson.

The legislature by an act approved February 11, 1867, reduced the limits of the city of Henderson, one of the outside limits being the eighth cross street or Hancock street, which was two blocks north of the Blackwell property.

By an act of March 5, 1870, the town limits were extended so as to conform to the area established by Henderson & Company in 1797, i. e., to the twelfth cross street. March 27, 1872, the limits were again reduced to the area fixed in the act of 1867, and so remained until 1904, when the boundary as fixed by the original plat was established by an ordinance annexing to the city the property between the old and new limits.

It is urged that by reason of the many changes in the city boundary no affirmative action was ever taken by

either the county or city, accepting the dedication of any of the existing streets of the city of Henderson, and particularly Green street. Gedge, &c. v. Commonwealth, 9 Bush 64, is cited in support of the proposition that there must be some acceptance of the dedication before the way can become a public road or street. It is conceded that for many years there has been a wagon road along what was formerly known as the Morganfield road, now Green street, but that the acceptance or extension of the city limits in 1904 could not be construed as an acceptance of any dedication that might have taken place in 1797. This proposition must be answered contrary to appellees' contention on the authority of two cases from this court, to-wit: City of Louisville v. Hall, by &c., 28 Rep. 1064, 91 S. W. 1133, wherein it was held that Mellwood avenue having been a public road before it was annexed to the city by ordinance, it became a public way without further dedication and the city was under the same duty with reference to it as to other public streets of the city. But even more conclusive is the case of City of Henderson v. Yeaman, etc., 169 Ky. 503, 184 S. W. 878, in which this question seems to have been entirely disposed of. In this latter case it appears that S. A. Young purchased a lot abutting on Main and Dixon streets. Dixon street had not been improved in any wise by the city. Shortly after his purchase, Young commenced filling a ravine in Dixon street, after which he annexed to his lot a portion of Dixon street 40 feet in width, for the entire length of his lot, and after having this in his possession for 15 years he sold it to Mrs. Yeaman, who instituted suit for the purpose of having her title to the strip of ground quieted. Dixon street as has heretofore been stated is one of the cross streets on the plat of 1797, and is only a few blocks north of the Blackwell and Hall property; there, as here, the case of Gedge v. Commonwealth, *supra,* was relied upon, together with other similar cases. After an extensive comment on each of the cases relied upon, the court says that Dixon street was one of the streets set apart as a public way when the town was laid off, and while it had not been improved by the city or any property owner this would not work an abandonment of it as a street; it remained as it was when it was set apart as a street.

It was also held that the city had the right at all times to improve the street and the public the right to use it; that while acceptance in some form was neces-

sary before the city could be charged with the duty of maintaining it in good condition for travel, and before it could be made liable in damages to any person injured by its unsafe condition, an acceptance of this nature would not be necessary to enable the city to retain possession of the street for the use to which it was dedicated. Nothing short of some affirmative act on the part of the city manifesting its purpose to abandon the street could work an abandonment thereof. It was further held that if it was a street in 1797, it was also a street in 1877 when Young took possession of it.

The only difference between the two cases is that the Young property was not affected by any changes made by the legislature in the city's boundary. But Green street having been once dedicated that dedication remained, in the absence of any proof showing an abandonment thereof, and when it was reincorporated in the city limits it came back into the city in the same condition in which it went out; there were no affirmative acts showing a contrary intention. Therefore the dedication of 1797 remained and Green street was a public way of the city of Henderson at the time of the passage of the ordinance, unless there had been an adverse holding of any portion thereof contrary to its use as a public street.

In Alvis, Exor., etc. v. City of Henderson, 16 B. Mon. 131, it is held the public cannot be ousted by mere title of claim or possession of anything less than an actual private occupancy or exclusive use evidenced by inclosure, and that it could not be defeated except by a continued adverse occupancy, or exclusive possession thus evidenced during the statutory period.

In 1873 the legislature passed an act, now section 2546, Kentucky Statutes, which provides that limitation shall not begin to run in respect to an action by a city or town for the recovery of any street or other public easement or any portion thereof, or the use thereof until the trustee, the council or the corporation have been notified in writing by the party in possession or about to take possession, to the effect that such possession will be adverse to the right or title of such city. Until such notice is given, the possession of streets and other public ways in any city shall be deemed amicable and the person in possession a tenant at will of such town or city. Thus it becomes necessary to ascertain whether there has been any such adverse holding under this statute as

gives appellees or either of them title to the property claimed.

Blackwell purchased his property in 1892 from H. F. Turner and wife, it being described as a lot 208x220 feet on the east side of the Morganfield road, beginning "at a stake in the line of Green street as the same is designated in deed map of 'west Henderson' to Eugene Geissler dated May 5, 1892, . . . at a stake sixty (60) feet from the south line of the yard fence of Mrs. Eliza Bailey."

It is the contention of Blackwell, supported by proof that at the time this lot was conveyed to him by his father-in-law it was enclosed by a picket fence, and that the front of this fence extended several feet beyond the point where the walk was constructed, and either by this deed or by adverse possession he has title to the ground formerly enclosed by the old picket fence.

In 1892 Blackwell's grantor conveyed to Eugene Geissler what is known as the Geissler addition to West Henderson, and which is the property to the south of that involved here. The east line of Green street, as designated in the deed (and map of West Henderson) to Geissler, does not coincide with the line of the picket fence. Three or four years after the property was conveyed to him, Blackwell tore down the picket fence and erected a residence on the property, and at a subsequent date he planted a hedge fence in front of his property several feet east of the old picket fence, but in proper alignment with the east line of Green street, as shown by the Geissler plat and also with the front line of Mrs. Bailey, who owns land to the north of the Blackwell tract.

That Blackwell, in the deed from Turner, did not acquire title to the strip of land upon which the walk is constructed is certain. The depth of his lot, the beginning point, the Geissler plat all place his front line where he has planted the hedge fence and which is east of the sidewalk. Unless, therefore, his proof shows this strip of land was held adversely to the city's rights he is subject to the payment of the apportionment warrant.

The proof is not clear as to the length of time the old fence enclosed this property, nor as to its exact location. There is testimony the present walk is east of the line of the old fence, while others say it was west thereof. Be this as it may there is not sufficient proof to show such adverse holding on the part of Blackwell nor his grantor as entitles Blackwell to hold as against the city.

But granting the proof established an adverse holding by his grantors this would not help Blackwell. There was no attempt on Turner's part to convey this strip of ground to Blackwell. Indeed the contrary is true. This being the case it becomes necessary for Blackwell to exhibit such possession of the land since he acquired title in 1892, to sustain his present contention. This, of course, he can not do as only twelve years intervened between the conveyance to him and the annexation of this property to the city. Under the act of 1873 it was necessary for him to have held adverse possession for a period of 15 years prior to 1904; nor is there any evidence that any written notice was ever given the city of such claim. It is true that on one or two occasions prior to the passage of the ordinance in 1914, the city attempted to construct a sidewalk at this same place, but the work was abandoned. Blackwell says this was due to his ownership of the property and his protest against the improvement being made. This is the only notice of his adverse claim; it was not in writing and this was but a few years before the passage of the ordinance under which the work was completed.

Viewing the record from any standpoint we fail to find any foundation upon which Blackwell can base his contentions. In City of Henderson v. Yeaman, *supra,* it appears that a fence had been built across Dixon Street, by whom built or for what purpose the evidence did not show. The court upon this point said:

"Plainly it was not put across the street by any person with a view of taking possession of the street enclosed by these fences or setting up any adverse possession of the street enclosed by these fences or setting up any adverse claim thereto, because there is no evidence in the record that any person, at any time, or in any manner asserted any adverse claim to any part of Dixon street until Judge Young enclosed the part of it that now constitutes the lot in controversy."

So in the present record it is not shown that Turner was claiming the strip adversely to the city at the time of the conveyance to Blackwell, to-wit: in 1892, nor at any other time. The property was not in the city limits in 1892, but had Turner so held, his holding would not inure to the benefit of Blackwell because, so far as we may judge from Blackwell's deed, if there was any such holding by Turner, in failing to convey it to Blackwell,

Turner thereby relinquished or abandoned any such claim or right he may have had.

In the case of Hall a somewhat different question is presented. His grantor is Lucinda Turner, the widow and devisees of H. F. Turner. His property adjoins the Blackwell property on the south and is described as "A certain lot or parcel of ground on the east side of the Morganfield Gravel road bounded as follows: 'the remainder of the land belonging to grantor on the east side of said road beginning at a stake in said road 268 feet from the south line of the yard fence of the Eliza Bailey house running thence with said street and in line of the telephone poles thereon, . . . ' " This deed places the sidewalk to the east of Hall's front fence if located according to the line of the telephone posts, but west thereof and off Hall's ground if in line with the yard fence of Mrs. Bailey. This deed was not executed until 1912, the property had been in the city for only eight years and limitation could not have run against the city in that time, nor was there any written notice of such alleged adverse holding, nor any notice other than the protest voiced by both appellees against the construction of the walk on the previous occasion, above referred to.

Aside from proof of the picket fence around the Blackwell lot, and the division fence separating the portion occupied by the house from what is termed the horse lot, there is no proof of any fence surrounding the Hall lot or any portion thereof, other than testimony that in 1914 there was a fence in front of the Hall lot. This fence was east of the walk as constructed, under the ordinance. It is so testified by the city engineer, at which time (1914) he says the posts indicated it was an old fence and that the wires were rusty. In the absence of any showing that Mrs. Turner had title to the strip of land upon which the walk is constructed in front of the Hall property it follows that the Hall property as well as that of Blackwell is subject to the payment of the apportionment for the sidewalk.

For some years prior to the passage of the ordinance appellees built a walk in front of their property, partly of planks and partly of granitoid blocks, and both after this temporary walk was made and for some time prior thereto it is testified that people going from the city to the fair grounds south of the Blackwell property, walked along this strip of ground and this use continued for

a number of years and until the walk was constructed by the city.

The mere attempt of Mrs. Turner to convey the property to which she did not have title was ineffective as a conveyance of any property belonging to the city; nor did Hall acquire any title to the strip of land in controversy. To hold that the front line of either the Blackwell or Hall lots is as contended by appelles would make a decided offset in Green street, a result certainly not contemplated or intended by the grantor. Since Turner owned all this property it is hardly probable he intended to thus break the continuity of the east line of Green street at this or any other point.

Satisfied as we are that the lower court erred in dismissing the petitions as to appellees and in awarding judgment against the city the judgment in each case is reversed for further proceedings consistent herewith.