## City of Paducah, et al. v. Taylor Real Estate, et al.

(Decided February 21, 1928.)

## Appeal from McCracken Circuit Court.

1. Adverse Possession.—If abutting owners claiming strip of land constituting part of street by adverse possession did not hold such land adversely for over 15 years prior to enactment of Ky. Stats., sec. 2546, in year 1873, and did not thereafter give city required written notice of intention to claim property adversely to city, they acquired no title by adverse possession.

2. Adverse Possession.—Where offer of abutting owners, who claimed title by adverse possession to strip of street 7 feet 8 inches wide, to compromise controversy with city by abandoning claim to all but 2 feet thereof if city would permit them to retain the 2-foot strip, and for certain other consideration, was accepted by city in 1879, and thereafter such owners took strip 2 feet 9 inches wide without objection by city, held that court will not now attempt to separate the excess 9 inches.

3. Adverse Possession.—Abutting owners' written offer to city to compromise controversy respecting strip of street to which they claimed title by adverse possession, signed by them and recorded in minutes of meeting of city council, held sufficient written notice of adverse claim of title by owners to city, within Ky. Stats., sec. 2546, requiring written notice to city of claim of adverse possession, to set 15-year statute running against city.

W. V. EATON and JOHN K. MacDONALD for appellants.

J. D. MOCQUOT for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The questions to be determined on this appeal are not difficult of understanding. The appellees are in the possession of 2 feet and 9 inches of Fourth street at the corner of Fourth and Broadway streets in the city of Paducah. Appellees rely on adverse possession.

In the year 1879 W. F. and Ex Norton erected a brick storehouse and offices which covered the 2 feet and 9 inches of ground now in controversy, and which it is admitted is a part of the street as the streets were originally established. This brick building remained standing until March 28, 1926, when it was destroyed by fire. The underground foundation of the building is still on the strip of land in dispute. Appellees are planning to erect a new building on the foundation of the old, and the city of Paducah has interposed an objection, and this suit is the result. The city contends that appellees are not the

owners of the land in dispute by adverse possession because they have not established by sufficient proof that they, and those under whom they claim, had the actual, peaceable, continuous, adverse possession of the strip of land for more than 15 years prior to the enactment of section 2546, Ky. Stats., in the year 1873. This section provides that adverse possession in respect to a street shall not run against a city until the party in possession or about to take possession, of the street or part thereof, shall, in writing, notify the governing body of the city that such possession will be adverse to the right or title of the city. The city further contends that no written notice was ever given by appellees, or those under whom they claim, to the effect that their possession would be adverse to the right or title of the city.

It will thus be seen that, in order for appellees to be entitled to the relief sought, they must establish that they, or those under whom they claim, held the strip of land in dispute adversely for more than 15 years prior to the enactment of section 2546, Ky. Stats., or that written notice was thereafter given of their intention to claim the property adversely to the right or title of the city, and that they have held the property adversely for 15 years after the giving of such notice.

It is insisted by the city that the evidence does not show that appellee, and those under whom they claim, held this land adversely for more than 15 years prior to the enactment of section 2546, Ky. Stats. If they did not, they are not entitled to the relief sought on this point. City of Covington v. Hall, 98 S. W. 317, 30 Ky. Law Rep. 356, City of Hartford v. Nall et al., 144 Ky. 259, 137 S. W. 1090; Davis v. City of Clinton, 79 S. W. 259, 25 Ky. Law Rep. 2021.

It is further insisted by the city that even if adverse possession has been established by the evidence for a period of 15 years prior to the act of 1873, still appellees cannot avail themselves of such possession because the Nortons purchased the property in 1863, and the deed to them described the property as running with the line of the street. They cite in support of their contention City of Henderson v. Yeaman, 169 Ky. 503, 184 S. W. 878. This point made by the city has some merit, and yet, if the parties who executed the deed to the Nortons intended to convey their entire inclosure, and if this strip of land was within their inclosure, it is very doubtful whether the city could maintain this point.

At all events, in 1879 a controversy arose between the Nortons and the city of Paducah over a strip of land which the city claimed was a part of its street. This strip of land was 7 feet and 8 inches wide, and it is clear that the Nortons were holding it adversely to the city at that time, or at least they were in possession of it and claiming it as their own. A special meeting of the city council was called, and the mayor and nine councilmen were present at the meeting. The mayor explained the reason for calling the meeting, and his statement showed that the meeting was called to take action in the matter "of compromise in the condemning of 7 feet 8 inches of ground at the corner of Broadway and Oak street belonging to W. F. and Ex Norton." The minutes of the meeting of the city council on that date show that W. F. Norton was present and on motion was granted "the privilege of addressing the council as to his proposition of compromise in the condemning of said 7 feet 8 inches of ground at the southwest corner of Broadway and Oak street." Fourth street was formerly known as Oak street.

Pausing here long enough to make an allusion, we will say that the minutes of that meeting strongly tend to support the contention of appellees that they had acquired the 7 feet and 8 inches of ground by adverse possession on November 21, 1879, the date of the meeting of the city council, or, if they had not so acquired this ground at that time, the city council thought so. The mayor, in his explanation of the purpose for which the meeting was called, referred to the strip of land as the property of the Nortons. The meeting was undoubtedly called, as is shown by the minutes, to consider the question of compromising a condemnation proceeding either already pending or which was contemplated. If the city had reached the conclusion that a condemnation proceeding was necessary to obtain this strip of land for street purposes, it must have reached the conclusion that the Nortons were the owners of it, and, as it appears it was admitted that it was a portion of the street, the Nortons could have become the owners of the property only by adverse possession, as there was no claim that they had purchased it from the city. It may be that the city council labored under a misapprehension as to the rights of the city under the law, but at this date it might well be said that the city recognized that it had lost all right to

this strip of land at the time of the proposed compromise in 1879.

The minutes of the meeting show that the Nortons, for the purpose of avoiding litigation with the city, proposed a compromise of the controversy, and this compromise related to 7 feet and 8 inches lying along or in Fourth street. The proposition made by the Nortons was that they would surrender 5 feet and 8 inches of the strip of land to the city, which they claimed was a part of their original lot, and would retain 2 feet of the strip in controversy. The proposition contained a provision that the city should pay to them $300 in cash to help them pay a Mrs. Patterson for a strip of land 4 feet wide which was to be added to their lot, and, in addition, the city was to consent for them to proceed with their building then under construction, and they were to be allowed to occupy 2 feet of the disputed strip. The proposition was contingent upon the consummation of the purchase from Mrs. Patterson and was open only for immediate acceptance.

The city council accepted the proposition by a yea and nay vote, as is shown by the minutes, eight of the councilmen voting for the compromise settlement and one voting against it. The acceptance bears date December 1, 1879. The order of acceptance directed the mayor and city attorney to prepare and accept the necessary transfers or deeds, and then directed the city clerk to draw a warrant on the city treasurer for the $300.

As to whether the arrangements were all carried out in accordance with the compromise agreement we do not know, but it is evident that the appellees, and those under whom they claim, took possession of that portion of the strip which they were to retain, and, while it is described in the minutes of the meeting as 2 feet, it is described in this litigation as 2 feet 9 inches. We do not think that is material, as appellees took possession of the strip of land which they were to retain, and, if they took a little more without any objection on the part of the city, we will not attempt to separate it after the long lapse of years.

It is suggested by counsel for the city that the minutes of the meeting of the city council do not show that it was the purpose of the city to surrender this strip of land to the Nortons, but they were only claiming an easement, allowing them to complete the erection of the particular building. We cannot agree with that contention. The

city council recognized that the ownership of the entire strip of 7 feet 8 inches was in the Nortons, and, when the city agreed that the Nortons should retain a portion of the strip in controversy, it consented that they hold it as their own.

It is contended by counsel for appellees that the minutes of the meeting of the city council are sufficient to constitute a written notice by appellees to the city under the provisions of section 2546, Ky. Stats. That section requires that the city council or the governing authorities of the city must be notified in writing by the party in possession, or about to take possession. The proposition to compromise stated the facts as above mentioned and was in writing, and was signed by W. F. and Ex Norton. Not only was it signed, but it was received and placed on record. This proposition of compromise clearly notified the city that, if the compromise was agreed to, the Nortons would surrender a portion of the disputed strip and would retain possession of that portion now in controversy for the purpose of erecting and building thereon. Taking the written proposition together with the minutes of the meeting, we have no difficulty in reaching the conclusion that the notice was a sufficient compliance with section 2546, Ky. Stats. Since the giving of notice, appellees have held possession of the property for nearly 50 years, and the city's right of entry has been tolled. The judgment of the lower court is correct.

Judgment affirmed.

Whole court sitting.